**MANDATE**

23-1112-cv
*In re Teladoc Health, Inc.*

1:22-cv-04687-DLC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of September, two thousand twenty-four.

PRESENT:
       JOSEPH F. BIANCO,
       MYRNA PÉREZ,
       ALISON J. NATHAN,
            *Circuit Judges*.

_____

LEADERSEL INNOTECH ESG,

           *Lead Plaintiff-Appellant*,

HUI MA,

           *Additional Plaintiff-Appellant*,

    v.                                                           23-1112-cv

TELADOC HEALTH, INC., JASON GOREVIC, MALA MURTHY, STEPHANY VERSTRAETE, BIMAL SHAH, RICHARD J. NAPOLITANO,

           *Defendants-Appellees*.

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED 10/15/2024

MANDATE ISSUED ON 10/15/2024

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | IRINA VASILCHENKO (Carol C. Villegas and Matthew J. Grier, *on the brief*), Labaton Keller Sucharow LLP, New York, New York. |
| FOR DEFENDANTS-APPELLEES: | AUDRA J. SOLOWAY (Matteo Godi, Daniel J. Kramer, and Caitlin E. Grusauskas, *on the brief*), Paul, Weiss, Rifkind, Wharton, & Garrison LLP, Washington, District of Columbia, and New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on July 6, 2023, is **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for further proceedings consistent with this summary order.

In this putative class action, Lead Plaintiff-Appellant Leadersel Innotech ESG and Additional Plaintiff-Appellant Hui Ma (collectively, "Leadersel") appeal from the district court's judgment, dismissing the claims brought against Defendants-Appellees Teladoc Health, Inc.; Chief Executive Officer Jason Gorevic; Chief Financial Officer Mala Murthy; Chief Marketing & Engagement Officer Stephany Verstraete; Chief Medical Officer of Product & Analytics Bimal Shah; and Senior Vice President, Chief Accounting Officer, and Controller Richard Napolitano (collectively, "Teladoc"). Leadersel, an investor in Teladoc, asserts claims against Teladoc under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and "control person" liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Teladoc is a telehealth company that acquired, and merged with, one of its key competitors, Livongo Health, Inc. ("Livongo"), in an $18.5 billion deal that closed in late October

2020.  As relevant here, Leadersel's claims relate to allegations that Teladoc made false and misleading statements about its integration progress with Livongo following the acquisition and merger.[1]  In particular, Leadersel's Second Amended Complaint ("SAC") lists numerous statements by Teladoc officials, between February 11, 2021 and July 27, 2022, that allegedly falsely assured investors that the integration with Livongo was either progressing well or fully complete in specific key areas, including the companies' technology and sales teams.

The district court granted Teladoc's motion to dismiss all of the claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See In re Teladoc Health, Inc. Sec. Litig.*, No. 22CV4687 (DLC), 2023 WL 4351455 (S.D.N.Y. July 5, 2023).  The district court held that Leadersel failed to plead actionable misrepresentations or omissions in its Section 10(b) claims, and accordingly also dismissed its Section 20(a) claims.  *Id*. at *6–9, *10 n.9.  Further, the district court denied Leadersel's request for leave to amend.  *Id.* at *10.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A plaintiff bringing a private suit under Section

---

[1] Leadersel also asserted fraud claims based on alleged misstatements about Teladoc's position in the competitive landscape.  However, on appeal, Leadersel does not challenge the dismissal of the claims based on those alleged misstatements and, thus, we do not address them.  Similarly, to the extent that Leadersel has not specifically challenged the dismissal of claims premised upon certain alleged misstatements regarding the integration, those challenges are waived.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (explaining that "[i]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal").

2

10(b) "must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Invs., Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (per curiam) (internal quotation marks and citation omitted).

In addition, when a complaint alleges securities fraud, we apply the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 743 (1995). *See ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Under Rule 9(b), a complaint "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and under the PSLRA, it must "specify each statement alleged to have been misleading[] [and] the reason . . . why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(1), (2)(A); *see also In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 416–17 (2d Cir. 2023).

A material misrepresentation or omission must be both (1) false or misleading, and (2) material. *See Singh v. Cigna Corp.*, 918 F.3d 57, 62–63 (2d Cir. 2019). Whether a statement is false or misleading is "evaluated not only by literal truth, but by context and manner of presentation." *Id*. at 63 (internal quotation marks and citation omitted). For a statement to be misleading, a plaintiff must plead that the speaker omitted facts whose omission makes the statement misleading to a reasonable investor. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187–89 (2015). "An alleged misrepresentation is material if there is a substantial likelihood that a reasonable person would consider it important in

3

deciding whether to buy or sell shares of stock." *Singh*, 918 F.3d at 63 (internal quotation marks and citation omitted). Similarly, for an alleged statement to be "material" under Section 10(b), we have held that it "must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome[.]" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014) ("*UBS*").

Moreover, under this standard, "expressions of puffery and corporate optimism do not give rise to securities violations." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (citation omitted); *see also Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020) ("Generic, indefinite statements of corporate optimism typically are not actionable."). As we have explained, "as long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129–30 (2d Cir. 1994) ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage."). Statements of opinions are actionable "if either 'the speaker did not hold the belief [he] professed' or 'the supporting facts [he] supplied were untrue.'" *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare, Inc.*, 575 U.S. at 186); *see also Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013) ("Subjective statements can be actionable only if the defendant's opinions were both false and not honestly believed when they were made." (internal quotation marks and citation omitted)).

We agree with the district court that the following alleged misstatements are not actionable: (1) Shah's February 11, 2021 statements, in response to a reporter inquiry, that the Livongo

4

integration was "going really great," that the two companies "really do fit together to provide . . . a continuum of care, a whole person experience," and that Teladoc was "well on [its] way of building . . . that highway to quickly deliver that [care] to the consumers and to [its] clients," Joint App'x at 310–11 ¶ 298 (emphasis omitted); (2) Gorevic's statements, during a February 24, 2021 earnings call, that "[t]he integration of our data platform and assets also continues to progress as we work to unlock the power of our combined data sets," and that Teladoc "[has] the capabilities to deliver and manage care virtually across the spectrum for consumers," *id.* at 317–18 ¶¶ 308–09 (emphasis omitted); (3) Murthy's statements on April 28, 2021, in response to an analyst's question about "an update on the [Livongo] platform integration side," that "the good thing is we have a very, very clear road map," and that "in terms of data integration," "we are well on our way to" achieving "deep integration," *id.* at 291–92 ¶ 240 (emphasis omitted); and (4) Gorevic's statement, in a *Business Insider* article published on November 10, 2021, that "[t]he vision that we laid out then—about whole-person care and bringing together the unique capabilities of two complementary companies to deliver something that really hasn't been done before—is on track," *id.* at 345 ¶ 386 (emphasis omitted).

These "[v]ague positive statements" regarding the integration—including phrases like "going really great," "continues to progress," "well on [the] way," and "on track"—are "too general to cause a reasonable investor to rely upon them and therefore are precisely the type of puffery that this and other circuits have consistently held to be inactionable." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021) (internal quotation marks and citation omitted); *see also Kleinman*, 706 F.3d at 153 (2d Cir. 2013) (holding that words like "encouraging" are expressions of puffery and optimism that are inactionable).[2]

---

[2] The SAC also alleges that non-verbatim statements contained in an October 2021 Credit Suisse report reflecting that Teladoc "management pushe[d] back" on "the claim that [it] was behind when it comes to

5

We further agree with the district court's dismissal of the claims based upon Teladoc's cautionary statements regarding integration risks in its 2020 Form 10-K, filed on March 1, 2021 ("2020 Form 10-K"). As the SAC itself details, the 2020 Form 10-K contained cautionary language, including a list of "potential difficulties [that Teladoc] may encounter in the integration process" with Livongo and which "could significantly disrupt our business," including specifically "the integration of management teams, strategies, technologies and operations, products and services." Joint App'x at 322–25 ¶¶ 319-327. To be sure, we have emphasized that "cautionary words about future risk cannot insulate from liability an insurer's failure to disclose the risk that has, in fact, materialized in the past and is virtually certain to materialize again." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021); *accord Rombach*, 355 F.3d at 173. Although Leadersel asserts that the cautionary statements in that 2020 Form 10-K were misleading because they "characterized certain Livongo integration challenges as purely hypothetical risks, when in fact those risks had already materialized[,]" Appellants' Br. at 41, we are unpersuaded. The SAC fails to plead specific facts leading up to the filing of the 2020 Form 10-K that would plausibly support a claim that risks materialized in a manner that was inconsistent with the cautionary statements, especially where such statements indicated that difficulties were already present by explaining that "the overall integration of Livongo post-merger will continue to be a time-consuming and expensive process that, without proper planning and effective and timely implementation, could significantly disrupt our business." Joint App'x at 323 ¶ 320 (emphasis omitted). In short, the allegations with respect to the general risk disclosures in the 2020 Form 10-K do not support a plausible fraud claim with the requisite specificity. *See Rombach*, 355 F.3d at

---

the actual integration of Livongo" were misleading. Joint App'x at 343 ¶ 381. We agree with the district court that those statements were "not pled with the particularity required by the PSLRA." 2023 WL 4351455, at *6 n.4.

6

173–74 (affirming dismissal of claims based on "[c]autionary words about future risk" where plaintiffs' "allegations do not support an inference that the company was in trouble" and are "consistent with unremarkable circumstances short of financial peril or instability"). Accordingly, the Section 10(b) claims based on these disclosures in the 2020 Form 10-K, like the other above-referenced alleged misstatements, were properly dismissed.[3]

However, we reach a different conclusion than the district court as to the following alleged misstatements regarding the status of the integration itself: (1) Gorevic's statement during a February 24, 2021 earnings call telling investors that "our commercial organization is now fully integrated, and our teams responsible for cross-selling have been collaborating for months," Joint App'x at 317 ¶ 308 (emphasis omitted); (2) Gorevic's statement during an April 28, 2021 earnings call, asserting that Teladoc had "made considerable progress across our key work streams" on the Livongo integration, including that "our commercial organization has been fully integrated with sales teams selling across the entire whole-person portfolio of products since early this year," *id.* at 328 ¶ 336 (emphasis omitted); (3) Verstraete's statement on November 18, 2021 that "we've significantly deepened our capabilities as we brought together and integrated the legacy Livongo and Teladoc marketing data and tech stacks," *id.* at 346 ¶ 392; and (4) the risk warnings in Teladoc's 2021 Form 10-K filed on February 28, 2022 ("2021 Form 10-K").[4]

---

[3] To the extent Leadersel suggests that the district court erred in failing to grant leave to re-plead with respect to these alleged misstatements, we disagree. A plaintiff "need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Leadersel has failed to demonstrate how a new amended complaint could correct the substantive defects identified by the district court and thus, as to these statements, leave to amend would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[4] Because we conclude that the district court erred in dismissing portions of the fraud claims under Section 10(b), we similarly find that it was error to dismiss the control person liability claims under Section 20(a) because of the lack of a primary violation under Section 10(b). *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022).

7

First, Gorevic's statements during the earnings calls in February and April 2021 that the commercial organization had been "fully integrated," using specific business units as examples, *see id.* at 317 ¶ 308 (citing "teams responsible for cross-selling"); *see also id.* at 328 ¶ 336 (citing "sales teams . . . across the entire whole-person portfolio of products"), could be reasonably relied upon by an investor as statements of a "concrete fact," *UBS*, 752 F.3d at 185.

The district court erred in concluding that "[t]he SAC does not adequately plead that any of these representations was false or materially misleading." 2023 WL 4351455, at *7. The SAC alleges not only that these statements in February and April 2021 were false, but also explains "with specificity why and how that is so." *Rombach*, 355 F.3d at 174. In particular, the SAC includes statements from multiple confidential witnesses who worked for Livongo in the relevant timeframe and who provided details as to the lack of integration in the sales teams at the time Gorevic's statements regarding full integration were made. For example, the SAC contains statements from the former employee responsible for integrating the two companies' sales forces, who recalled that the integration of the sales teams was still not complete by the time she left in June 2021. In addition, the SAC alleges that a former sales vice president at Livongo, and then Teladoc, stated that Teladoc "had no idea" where to place Livongo personnel within Teladoc and that there were no synergies and very little overlap between the sales teams before she left in fall 2021, providing specific examples to support those statements (which the SAC further supports with emails and other documentation). Joint App'x at 264 ¶ 171. The SAC also includes alleged statements by a former growth acquisition manager who stated that she worked on a team that was still focusing exclusively on selling Livongo products when she left Teladoc in fall 2021, and many of the business segments at Teladoc were "siloed" from their Livongo counterparts during her employment. *Id*. at 271 ¶ 187.

8

These specific allegations state a plausible claim that Gorevic's declarations of "full integration" were misleading, *see IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145–46 (2d Cir. 2021), and present more than a mere "difference of opinion" between employees and higher management, 2023 WL 4351455, at *7. In particular, the alleged confidential witness statements and supporting documents present inconsistencies with Gorevic's definitive statements that cannot be resolved "at this stage of the litigation, when we must accept all factual claims in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *IWA Forest Indus. Pension Plan*, 14 F.4th at 147 (internal quotation marks and citation omitted) (holding that the district court erred in dismissing allegedly misleading statements of company's progress in reducing inventory in light of allegations from "a cadre of confidential informants" contradicting the company's statements).

Second, Verstraete's statement in November 2021 relating to the technological integration of Livongo's and Teladoc's data platforms—including the integration of "the legacy Livongo and Teladoc marketing data and tech stacks"—is a plausibly false and misleading statement about the integration of specific technical data that is actionable. Joint App'x at 346 ¶ 392 (emphasis omitted). Here, the district court concluded that "the SAC . . . does not include allegations about the failure to integrate 'marketing data' or 'tech stacks.'" 2023 WL 4351455, at *8. However, a confidential witness did provide such allegations. According to that witness, "tech stacks" referred to computer applications used for marketing purposes, such as email blasts or text messages to customers, and the marketing team obtained data for use in these techs stacks from a data system called "Tableau." The confidential witness further stated that Teladoc did not even begin the process of integrating Livongo's and Teladoc's Tableau data systems until well after Verstraete's statement. Although the district court discounted those allegations because Verstraete's

9

"statement refers specifically to marketing data and tech stacks" and "does not refer to data systems or to Tableau," *id*., the SAC specifically alleges that Tableau is the system used to store the marketing data. Thus, if the Tableau system was not integrated, as the confidential witness asserts, then there could be no integration of the marketing data or tech stacks, as claimed by Verstraete. Therefore, the district court erred in finding that the SAC did not sufficiently allege how Verstraete's statement regarding this technological integration between Livongo and Teladoc was false and misleading.

Finally, we conclude that dismissal was similarly unwarranted with respect to Teladoc's warnings of hypothetical integration risks with Livongo in its 2021 Form 10-K. The SAC contains specific allegations that are sufficient to plausibly support a finding that, by the time of the filing of the 2021 Form 10-K in February 2022, the risks regarding the Livongo integration were not merely "potential difficulties that Teladoc may encounter in the integration process" as outlined in the cautionary disclosures, Joint App'x at 352 ¶ 409 (brackets and emphases omitted), but had already materialized and resulted in significant disruption to Teladoc's business. *See Set Cap. LLC*, 996 F.3d at 86 (holding that, although warnings that hedging activity "could" or "may" impact prices of the notes could have "possibly sufficed" when the notes were first issued, the warnings remained unchanged for years even after "market volatility put[] to rest any uncertainty as to the price impact," and thus were actionable misstatements).

\*     \*     \*

10

Although Teladoc argues in the alternative that all of the claims should be dismissed because the SAC failed to adequately plead scienter and loss causation, the district court did not consider those arguments, and we decline to do so here in the first instance. *See Noto*, 35 F.4th at 106 n.51. We have considered the remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11