UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TELADOC HEALTH, INC. SECURITIES LITIGATION | Case No. 1:22-cv-04687 (DLC) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO**
**<u>DISMISS SECOND AMENDED CLASS ACTION COMPLAINT</u>**

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000

*Attorneys for Defendants Teladoc Health, Inc., Jason Gorevic, Mala Murthy, Stephany Verstraete, and Richard Napolitano*

Dated: January 10, 2025

## TABLE OF CONTENTS

I. The SAC Fails to Allege a Strong Inference of Scienter ................................................... 1

    A. Plaintiffs Fail to Plead Motive ............................................................................. 1

    B. Plaintiffs Fail to Plead Conscious Disregard or Recklessness .............................. 2

    C. Plaintiffs Cannot Rely On "Core Operations" or "Corporate Scienter" To Support an Strong Inference of Scienter as to Any Defendant ........................ 6

II. The Complaint Fails to Allege Loss Causation ............................................................... 8

III. The Complaint Fails to Allege Control Person Claims .................................................. 11

Conclusion ................................................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Advanced Battery Techs., Inc.*, 781 F.3d 638 (2d Cir. 2015) ............................................... 4

*In re Alstom SA*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................... 11

*Ark. Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022) .................................................................................................... 1, 2

*Avon Pension Fund* v. *GlaxoSmithKline PLC*, 343 F. App'x 671 (2d Cir. 2009) ......................... 1

*In re Bristol Myers Squibb Co. Securities Litigation*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008) ....................................................................................... 11

*Buxbaum* v. *Deutsche Bank A.G.*, 2000 WL 33912712 (S.D.N.Y. Mar. 7, 2000) ......................... 7

*Cent. States, Se. & Sw. Areas Pension Fund* v. *Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ............................................................................................. 8, 9

*In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F. Supp. 3d 199 (E.D.N.Y. 2022) ..................... 5

*City of Omaha Police & Fire Retirement System* v. *Evoqua Water Technologies Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020) ......................................................................................... 7

*City of Pontiac General Employees' Retirement System* v. *Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012) ......................................................................................... 4

*City of Taylor Gen. Emps. Ret. Sys.* v. *Magna Int'l Inc.*,
  967 F. Supp. 2d 771 (S.D.N.Y. 2013) ......................................................................................... 2

*In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ............... 7

*Dolgow* v. *Anderson*, 438 F.2d 825 (2d Cir. 1970) ....................................................................... 1

*In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................... 4

*DoubleLine Cap. LP* v. *Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393 (S.D.N.Y. 2018) ................ 10

*Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336 (2005) .................................................................... 8

*In re: EZCorp, Inc. Securities Litigations*,
  181 F. Supp. 3d 197, 214 (S.D.N.Y. 2016) ............................................................................... 11

*Feasby* v. *Industri-Matematik Int'l Corp.*,
  2000 WL 977673 (S.D.N.Y. July 17, 2000) ............................................................................... 2

*In re Frontier Commc'ns, Corp. S'holders Litig.*,
   2020 WL 1430019 (D. Conn. Mar. 24, 2020) ................................................................... 9

*Gauquie* v. *Alb. Molecular Rsch., Inc.*,
   2016 WL 4007591 (E.D.N.Y. July 26, 2016) ................................................................... 5

*Hawaii Structural Ironworkers Pension Trust Fund* v. *AMC Entertainment Holdings, Inc.*,
   422 F. Supp. 3d 821, 836 (S.D.N.Y. 2019) ...................................................................... 6

*In re Hi-Crush Partners L.P. Securities Litigation*,
   2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ..................................................................... 7

*Jackson* v. *Abernathy*, 960 F.3d 94 (2d Cir. 2020) ..................................................................... 7

*Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ..................................................... 11

*Levy* v. *Gutierrez*, 2017 WL 2191592 (D.N.H. May 4, 2017) ......................................................... 1

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund* v. *Am. Express Co.*,
   724 F. Supp. 2d 447 (S.D.N.Y. 2010) .......................................................................... 4, 5

*Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*,
   797 F.3d 160 (2d Cir. 2015) ........................................................................................ 7

*In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553 (S.D.N.Y. 2014) .................................................. 2

*In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442 (2d Cir. 2015) .......................... 6

*New Eng. Carpenters Guaranteed Annuity and Pension Funds* v. *DeCarlo*,
   122 F.4th 28 (2d Cir. 2023) ......................................................................................... 5

*New Orleans Employees Retirement* v. *Celestica, Inc.*,
   455 F. App'x 10 (2d Cir. 2011) ..................................................................................... 3

*In re Omega Healthcare Investors, Inc. Securities Litigation*,
   563 F. Supp. 3d 259 (S.D.N.Y. 2021) .......................................................................... 10

*In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010) .............................................. 8

*In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301 (E.D.N.Y. 2024) ........................... 2

*Ret. Sys. of Gov't of the V.I.* v. *Blanford*, 794 F.3d 297 (2d Cir. 2015) ..................................... 4

*Rosner* v. *Star Gas Partners, L.P.*, 344 F. App'x 642 (2d Cir. 2009) ......................................... 12

*Rothman* v. *Gregor*, 220 F.3d 81, 91 (2d Cir. 2000) .................................................................. 5

*In re Salix Pharms., Ltd.*, 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ...................................... 5

*Saraf* v. *Ebix, Inc.*, 2024 WL 1298246 (2d Cir. Mar. 27, 2024) .................................................... 4

*Schiro* v. *Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019) ...................................... 4

*Silsby* v. *Icahn*, 17 F. Supp. 3d 348 (S.D.N.Y. 2014) ................................................................. 3

*In re UiPath Securities Litigation*, 2024 WL 4667269 (S.D.N.Y. Nov. 4, 2024) ......................... 4

Plaintiffs' opposition disregards that the vast majority of their case has been dismissed. Although the four remaining alleged misstatements largely concern specific integration milestones, Plaintiffs focus on irrelevancies and fail to identify *any* factual allegations that Defendants knew those milestones had not been achieved and intentionally lied about that. Likewise, Plaintiffs do not show that any alleged corrective disclosure actually concerned the subjects of the alleged misstatements, as opposed to other now-dismissed disclosures. The Complaint should be dismissed with prejudice.

## I. The SAC Fails to Allege a Strong Inference of Scienter

### A. Plaintiffs Fail to Plead Motive

Plaintiffs concede the Individual Defendants *increased* their net holdings during the Class Period and *sold more shares* during the Control Period—undermining any inference of scienter. (Mot. 6, 12, 14.) Plaintiffs urge this Court to focus on sales proceeds, rather than any pattern of suspicious trading (Opp. 19), but sales are not "unusual" simply because they are highly profitable. *See Ark. Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*, 28 F.4th 343, 351, 355 (2d Cir. 2022) ($55 million profit not unusual). While Plaintiffs speculate about the reasons for Control-Period sales (Opp. 19), that is irrelevant: the class-period pattern of selling fewer shares and increasing overall holdings shows "only confidence in the future of their company." *Avon Pension Fund* v. *GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009) (citation omitted). And Plaintiffs are wrong that acquisitions through grants or options are "suspicious" under *Dolgow* v. *Anderson*, 438 F.2d 825, 828 (2d Cir. 1970), or *Levy* v. *Gutierrez*, 2017 WL 2191592, at *14 (D.N.H. May 4, 2017), which turned on unusual sales compared to prior periods, not present here.

Plaintiffs are also wrong that Gorevic and Verstraete's Rule 10b5-1 plans provide only an affirmative defense. (Opp. 20 n.9.) That is not the law of the Second Circuit. *See Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 355–56. Plaintiffs also do not dispute that *all* of Verstraete's relevant sales

1

were made pursuant to a Rule 10b5-1 plan or for tax withholding purposes, which do not support a strong inference of scienter. (Mot. 12.) And contrary to their argument (Opp. 20 n.9), Verstraete adopted her Rule 10b5-1 plan before her one alleged false statement, thus delegating trading authority before she allegedly inflated the stock price. As such, her stock sales cannot evince scienter absent additional facts showing that she entered the plan under suspicious circumstances. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014). Here, Plaintiffs do not even attempt to point to such facts.

Plaintiffs also argue that "some" sales made to cover taxes does not negate scienter. (Opp. 19, 20 n.9.) But ***every sale*** by Murthy, and ***every non-plan sale*** by Verstraete, was made to satisfy tax obligations, which undermines motive, (Mot. 12, 14 (citing cases)), especially since Defendants acquired more shares than they sold during the Class Period, *Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 356 n.4.

Lastly, Plaintiffs point to sales by non-defendants, such as retiring COO Sides and departing Livongo founder Tullman. (Opp. 20.) Sales by non-party insiders are irrelevant to individual defendants' motives. *See In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301, 312–13 & n.2 (E.D.N.Y. 2024). And trading by outgoing executives—like Tullman (¶538; Ex. 16 at 30) and Sides (Ex. 17 at 2)—is not suspicious anyway. *See Feasby* v. *Industri-Matematik Int'l Corp.*, 2000 WL 977673, at *4 n.5 (S.D.N.Y. July 17, 2000); *City of Taylor Gen. Emps. Ret. Sys.* v. *Magna Int'l Inc.*, 967 F. Supp. 2d 771, 799 (S.D.N.Y. 2013).

### B. Plaintiffs Fail to Plead Conscious Disregard or Recklessness

Absent motive, Plaintiffs attempt to surmount the greater obstacle of pleading conscious disregard or recklessness through CWs. But ***no CW*** alleges that any Individual Defendant had internal knowledge inconsistent with public statements.

2

**Gorevic**.  Plaintiffs identify no instance in which Gorevic was allegedly told that, contrary to his statements, the sales teams had not been "fully" integrated.  (Opp. 8.)  Instead, Plaintiffs largely focus on *irrelevant* issues allegedly shared with *other* executives.  (*See, e.g.*, ¶342 (CW2 asking Sides about integration, where Sides's response—"That's a great question"—"worried CW2"); ¶173 (CW2 drafting document, shortly after merger, containing "open questions" for management); ¶¶135–36 (CW2's e-mail chain with Bimal Shah, over CW2's concerns about Gorevic "overselling Teladoc's remote patient monitoring ('RPM') capabilities to clients").)  These allegations are untethered from the sales team integration, much less plead that *Gorevic* had contemporaneous inconsistent information.

As to Gorevic specifically, Plaintiffs harp on supposed communications with Gorevic: (i) attendance by CW2, an employee three levels removed from Gorevic, at monthly townhalls where Gorevic fielded unspecified questions "through the chat function" about unspecified integration issues, which Gorevic allegedly "avoided" or answered evasively (¶515); and (ii) CW4's encounter with Gorevic about "plans for integrating Livongo," where Gorevic suggested she wait for his upcoming presentation, which CW4 found "underwhelming" (¶523).  It is striking that neither CW identifies *a single instance* when Gorevic was told that the sales team integration had not been completed.  Likewise, no CW offers any allegations about the Risk Statement contained in the Form 10-K; to the contrary, the CW allegations are so vague that they fail to show any Defendant was aware that the Statement was misleading.[1]

Plaintiffs' authorities are inapposite.  (Opp. 11.)  Plaintiffs cite *New Orleans Employees Retirement* v. *Celestica, Inc.*, but the CW allegations there concerned "detailed discussions" of the

---

[1] Prior to and early in the Class Period, Defendants warned about the risks of the integration. (Mot. 7–8; ¶¶308, 328–29.)  While Plaintiffs dismiss these warnings as "boilerplate truisms," (Opp. 14), that does not negate that they "plainly alerted investors to the risks involved" in the integration, "weigh[ing] against scienter."  *Silsby* v. *Icahn*, 17 F. Supp. 3d 348, 369–70 (S.D.N.Y. 2014).

3

*actual subject* of the misstatements. 455 F. App'x 10, 13–14 (2d Cir. 2011). While a CW need not recall specific questions "verbatim" (Opp. 10 n.3 (citing *Emps.' Ret. Sys. of Gov't of the V.I.* v. *Blanford*, 794 F.3d 297, 306 (2d Cir. 2015)),[2] they must still substantiate that the actual subject of the misstatement was raised. Unspecified questions about "integration or other issues" (¶515)— asked at some unspecified townhall and answered in some unspecified way—are insufficient. *See In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008). Likewise, Plaintiffs rely on *In re UiPath Securities Litigation*, but those plaintiffs alleged specific details known to defendants that contradicted their statements. 2024 WL 4667269, at *10 (S.D.N.Y. Nov. 4, 2024).

Plaintiffs fall back on arguing that Gorevic was "reckless in 'failing to check information he had a duty to monitor'" (Opp. 9), and "would have known" the relevant information "given the importance . . . to Teladoc's operations" (Opp. 13). But alleged failures to monitor do not plead scienter. *See Saraf* v. *Ebix, Inc.*, 2024 WL 1298246, at *3 (2d Cir. Mar. 27, 2024); *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 646 (2d Cir. 2015). Nor does Gorevic's position as CEO show he actually knew specific information known to junior employees. The mere existence of a "corporate hierarchy" and "channels of information is not enough." *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund* v. *Am. Express Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010) (citation omitted); *Schiro* v. *Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019).

**Verstraete**. Plaintiffs do not dispute that the SAC fails to plead Verstraete had any knowledge that Tableau was not integrated. Plaintiffs' remaining arguments fail:

*First*, Plaintiffs are wrong that the "specificity" of Verstraete's statement somehow shows her knowledge of contrary facts. (Opp. 15.) In *City of Pontiac General Employees' Retirement*

---

[2] *Blanford* is inapposite: defendants stated that "the company was ramping up production without accumulating excess inventory," yet CWs described *specific instances* where defendants created "phantom shipments to hide excess inventory" and "hid[] overstocked inventory behind black plastic" blocked from auditors' view. 794 F.3d at 302, 308.

4

*System* v. *Lockheed Martin Corp.*, on which Plaintiffs rely, the complaint identified a specific executive who personally received inconsistent information about division performance, and pleaded that two senior executives regularly received their information about the division from her. 875 F. Supp. 2d 359, 370–72 (S.D.N.Y. 2012). The specificity of the senior executives' statements suggested they received contradicting information from the junior executive. *Id.* at 372. That reasoning is inapposite here, where Plaintiffs do not allege that Verstraete received information from some other culpable defendant, *see In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F. Supp. 3d 199, 222 n.10 (E.D.N.Y. 2022), let alone "what specific contradictory information [Verstraete] received [and] when," *Am. Express Co.*, 430 F. App'x at 461, 463–64 (scienter not alleged despite "twelve [CWs]"). Plaintiffs' reliance on *Rothman* v. *Gregor* likewise fails. *See* 220 F.3d 81, 91 (2d Cir. 2000) (pleading specific allegations of contrary information).

*Second*, Plaintiffs allege that the "magnitude" of the fraud demonstrates scienter. (Opp. 15.) Nonsense. Verstraete's alleged fraud is erroneously saying that "marketing data and tech stacks" were integrated when a single software application (Tableau), used by "non-tech savvy employees to easily access and visualize [patient] data," was not yet integrated, impacting employees' efficiency. (¶¶121, 126, 192.) This is nothing like Plaintiffs' cases, where the fraud "impacted 40-50% of [a company's] sales," *Gauquie* v. *Alb. Molecular Rsch., Inc.*, 2016 WL 4007591, at *3 (E.D.N.Y. July 26, 2016), or "resulted in a $500 million diminution in revenue," *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *16 (S.D.N.Y. Apr. 22, 2016). Regardless, the purported significance of a misstatement cannot alone demonstrate scienter. *See New Eng. Carpenters Guaranteed Annuity and Pension Funds* v. *DeCarlo*, 122 F.4th 28, 49 (2d Cir. 2023).

*Third*, Plaintiffs argue it was "unreasonable" for Verstraete to speak about integrating marketing data because a CW in Verstraete's indirect reporting line "felt" she did not "understand"

5

Livongo or its legacy products. (Opp. 15–16; ¶¶63, 394.) Opinions of Verstraete's competence are irrelevant. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 446 (2d Cir. 2015).

**Murthy**. Plaintiffs argue that Murthy "admitted" the falsity of the 2021 Form 10-K Risk Statement by noting, in July 2022, the "continued integration of our data that underpins bringing together all of our suite of products." (Opp. 16; ¶480.) But that statement did not "admit" anything about the Risk Statement, which provided no assurance that product integration had been completed.

Plaintiffs assert that CWs show Murthy's knowledge of "integration problems" when she signed the 2021 Form 10-K. (Opp. 16 (citing ¶¶226–27).) But Plaintiffs cite internal meetings about "*increased competition*" (¶226), including an undated incident where CVS "tried to flip" clients by "leveraging the integration issues at Teladoc," without explaining when or what CVS actually shared, or what Murthy was told (¶227). Such allegations about the now-dismissed *competition claims* say nothing about Murthy's contemporaneous *integration*-related knowledge.

**Napolitano**. Plaintiffs offer zero facts supporting Napolitano's scienter. They argue his intent can be inferred from Teladoc's overly rosy risk disclosures, and because "the SAC pleads other facts supporting his scienter." (Opp. 15–16.) What those "other facts" might be, Plaintiffs do not say. Nor do they explain what allegations might show that Napolitano knew that the disclosures were false or misleading.

### C.  Plaintiffs Cannot Rely On "Core Operations" or "Corporate Scienter" To Support an Strong Inference of Scienter as to Any Defendant

Though the Second Circuit has not endorsed the "core operations" doctrine (which is not viable post-PSLRA, *see* Mot. 15), Plaintiffs double-down on it (Opp. 17). Plaintiffs cite *Hawaii Structural Ironworkers Pension Trust Fund* v. *AMC Entertainment Holdings, Inc.*, which found

6

that the acquisition and renovation of theaters *could* be a core operation of a theater company, but notably concluded that, "on its own, [was] insufficient to allege a strong inference of scienter." 422 F. Supp. 3d 821, 836 (S.D.N.Y. 2019). Plaintiffs' remaining cases (Opp. 18–19) do not support the proposition that a post-merger integration is a core operation. *Buxbaum* v. *Deutsche Bank A.G.* turned on the defendant's "personal[] involve[ment]" in takeover talks, where the alleged misstatements included his own *denials* that such talks had occurred. 2000 WL 33912712, at *19 (S.D.N.Y. Mar. 7, 2000). And *In re Hi-Crush Partners L.P. Securities Litigation* hinged on defendants' presumed knowledge that a deal projected to generate 18% of the company's annual revenue had been repudiated. 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013).

Like the acquisition in *City of Omaha Police & Fire Retirement System* v. *Evoqua Water Technologies Corp.*, 450 F. Supp. 3d 379, 423–24 (S.D.N.Y. 2020), the Livongo integration was not a "core operation" of Teladoc's business. And even if it was, the SAC fails to plead sufficient factual allegations regarding the Individual Defendants' scienter to bolster any reliance on the "core operations" doctrine, which cannot alone establish scienter. *See In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021).

Plaintiffs also invoke a "corporate scienter" theory, focused on the alleged fraudulent intent of Sides, DeVivo, and Shah. (Opp. 20–21.) But none are alleged to have had fraudulent intent. Nor are they alleged to be responsible for making or disseminating any of the four alleged misstatements, as Circuit law requires. *See Jackson* v. *Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020). And *Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, is inapposite: there, two high-level employees omitted and included facts in offering documents despite correspondence among themselves suggesting the availability of contrary information. 797 F.3d 160, 178 (2d Cir. 2015).

7

## II.     The Complaint Fails to Allege Loss Causation

The SAC must also be dismissed on the independent ground that it fails to allege loss causation: none of the three alleged corrective disclosures revealed any then-undisclosed fact rendering an alleged misrepresentation false.[3] (Mot. 16–21.)

**November 2021 *Business Insider* Article**.  Plaintiffs do not dispute that the *Business Insider* article can only possibly be corrective of Gorevic's two preceding statements. (*See* Opp. 22–23.) Plaintiffs also do not—and cannot—refute the plain statement in the Article that the sales teams were combined in January 2021 and were cross-selling products. (Mot. Ex. 10 at 4.) Plaintiffs instead point to other discussions about integration challenges (Opp. 22–23), but, again, those challenges were ***not*** the subject of Gorevic's Sales Team Integration Statements (Mot. 17–18). *See In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (corrective disclosure must reveal "some then-undisclosed *fact* with regard to the specific misrepresentations" (emphasis added)).

Plaintiffs also argue that the Article "caus[ed] Teladoc's stock price to fall over 4.2%." (Opp. 22). The securities fraud laws, however, do not insure investors for stock drops not caused by fraud, *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 345 (2005), particularly where similar drops repeatedly preceded the Article, Ex. 18, Daily Stock Prices (showing 2.8% drop on November 4; 2.5% on November 5; and 2.2% on November 9), undermining loss causation, *Cent. States, Se. & Sw. Areas Pension Fund* v. *Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (decline in "stock price *before* the article was published" undermines loss causation).

---

[3] Plaintiffs mischaracterize Defendants' motion as a "truth-on-the-market defense." (Opp. 23.) But Defendants made the unremarkable argument that, to allege loss causation based on a corrective disclosure, Plaintiffs must point to the disclosure of a previously undisclosed risk. (Mot. 18 n.6 (citing cases).)

8

**April 2022 Announcement**. That Teladoc had been "working on integrating the Livongo products," but was "not done" yet, does not "correct" Gorevic's statements that the sales teams were integrated, or Verstraete's statement about the integration of the tech stacks and marketing data, or the Risk Statement about possible difficulties. (Mot. 19.) Plaintiffs concede as much by failing to identify any new integration-related fact revealed by the April 2022 announcement.

Plaintiffs make two other arguments. *First*, they argue that the market "link[ed]" the goodwill impairment to integration problems. (Opp. 24.) But the reports Plaintiffs identify (¶¶274–77) do not attribute the impairment to any ***newly revealed*** information about the integration's status contained in the April 2022 earnings release. *See* Exs. 19-22.[4] At most, the reports mention previously disclosed integration challenges. But "[c]orrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time," *Cent. States*, 543 F. App'x at 75 (citation omitted), and public commentary about integration generally is not corrective of specific alleged misstatements, *In re Frontier Commc'ns, Corp. S'holders Litig.*, 2020 WL 1430019, at *25 (D. Conn. Mar. 24, 2020) (despite analyst commentary, loss causation not pleaded where "corrective disclosures refer[red] to the [a]cquisition in general" but not to the specifics of the alleged misstatement). *Second*, Plaintiffs argue that increased competition was attributable to integration problems. (Opp. 24.) That argument is wholly speculative, and Teladoc said nothing of the sort in its April 2022 announcement, which, like Plaintiffs' SAC, attributed increased competition to new competitors entering the market. (¶454.) Plaintiffs also ignore that the competition issues were largely driven by BetterHelp—an entirely different business from Livongo. (Mot 19–21; ¶¶453–56.)

---

[4]    The Goldman Sachs report cited by Plaintiffs (¶274) is not available to the public.

9

**July 2022 Announcement**.  Plaintiffs argue that the July 2022 announcement is corrective, but fail to identify *any* new integration-related facts it revealed to the market. (Mot. 20.)  Further, even assuming (wrongly) that the *Business Insider* article and/or April announcement somehow "revealed" new corrective information, the July statement merely repeated that product integration "still continues." (¶480.)  Once a disclosure "let[s] the cat out of the bag," subsequent reports cannot form an independent basis for liability. *DoubleLine Cap. LP* v. *Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 459 (S.D.N.Y. 2018).

Plaintiffs attempt to create a causal link by citing Defendants' purported statement during a follow-up conference call that the increased competition was itself due to integration issues. (Opp. 24.)  That misstates the transcript.  In response to the question "what could get deal activity going again?", a member of Teladoc's management stated that many competitors were succeeding with only "point solutions," so one way to improve Teladoc's competitive advantage would be integrating its "three separate apps," which were "not yet fully integrated," and present itself as a "one stop shop." (¶499.)  In other words, further software developments could address "point solution" competition.  This is irrelevant to the pleaded fraud.

Plaintiffs also rely on the magnitude of the stock-price declines in April and July (Opp. 24–25), but ignore the non-fraud-related bad news about increased advertising spend at BetterHelp and increased competition in the chronic care sector. (Mot. 19–20.)  Plaintiffs cite *In re Omega Healthcare Investors, Inc. Securities Litigation*, but the defendant there directly attributed its cashflow problems to the insolvency of its second-largest client, after failing to disclose for a year that the client could not make rental payments. 563 F. Supp. 3d 259, 268–69 (S.D.N.Y. 2021).

Plaintiffs argue in a footnote that loss causation may be pleaded from the April and July announcements if they reflect the materialization of an undisclosed risk. (Opp. 24 n.13.)  But this

10

alternative loss-causation argument is also foreclosed. As the Second Circuit has made clear, the risk-materialization theory also requires that the *subject* of Defendants' misstatements (i.e., the alleged fraud)—rather than other factors—caused the loss. *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005). Here, the revised guidance and impairments were ***not*** attributed to the subjects of the four alleged misstatements, and any purported link to integration challenges is pure conjecture.

### III.     The Complaint Fails to Allege Control Person Claims

In addition to failing to allege any primary violation, which alone is fatal, Plaintiffs fail to plead facts supporting an individualized determination that any defendant culpably participated in the alleged fraud. (Mot. 21–22.) Plaintiffs point to *In re: EZCorp, Inc. Securities Litigations* (Opp. 25), but that case did not involve "similar facts" because the defendant owned the company and participated in all relevant aspects of management. 181 F. Supp. 3d 197, 214 (S.D.N.Y. 2016).

Notably, Plaintiffs make no allegation that Verstraete, who did not sign the 2021 Form 10-K, controlled information communicated by Teladoc. And her title alone is insufficient. *See, e.g.*, *In re Alstom SA*, 406 F. Supp. 2d 433, 487–88 (S.D.N.Y. 2005). Plaintiffs cite *In re Bristol Myers Squibb Co. Securities Litigation* (Opp. 25), but control was pleaded there because one defendant was the misstatement's "signor and speaker" and the other was "alleged to have been the one to actually negotiate and enter into" the agreements that were the subject of the misstatement. 586 F. Supp. 2d 148, 171 (S.D.N.Y. 2008).

**CONCLUSION**

Defendants respectfully submit that the Complaint should be dismissed with prejudice in its entirety. Plaintiffs' perfunctory request for leave to amend—buried in a footnote (Opp. 25 n.18)—should be denied on the same grounds as Plaintiffs' earlier request. *See also Rosner* v. *Star Gas Partners, L.P.*, 344 F. App'x 642, 644–45 (2d Cir. 2009).

Dated: January 10, 2025
New York, New York

                                        Paul, Weiss, Rifkind, Wharton & Garrison LLP

                                        By: */s/ Audra J. Soloway*
                                        Daniel J. Kramer
                                        Audra J. Soloway
                                        Caitlin E. Grusauskas
                                        1285 Avenue of the Americas
                                        New York, NY 10019-6064
                                        Phone: (212) 373-3000
                                        dkramer@paulweiss.com
                                        asoloway@paulweiss.com
                                        cgrusauskas@paulweiss.com

                                        Matteo Godi
                                        2001 K Street, N.W.
                                        Washington, DC 20006-1047
                                        Phone: (202) 223-3700
                                        mgodi@paulweiss.com

                                        *Attorneys for Teladoc Health, Inc., Jason Gorevic, Mala Murthy, Stephany Verstraete, and Richard Napolitano*