MANDATE

1:22-cv-04687-DLC

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: Aug 18 2026

25-1022
*In re Teladoc Health, Inc. Sec. Litig.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of July, two thousand twenty-six.

PRESENT:

RICHARD J. SULLIVAN,
JOSEPH F. BIANCO,
BETH ROBINSON,
*Circuit Judges*.

---

IN RE TELADOC HEALTH, INC. SECURITIES LITIGATION

---

LEADERSEL INNOTECH ESG,

*Lead Plaintiff-Appellant*,

HUI MA,

*Plaintiff-Appellant,*

JEREMY SCHNEIDER, *Individually and on Behalf of All Others Similarly Situated,* WALTER DE SCHUTTER,

*Plaintiffs,*

v. No. 25-1022

TELADOC HEALTH, INC., JASON GOREVIC, MALA MURTHY, STEPHANY VERSTRAETE, RICHARD J. NAPOLITANO,

*Defendants-Appellees,*

BIMAL SHAH,

*Defendant.*

---

**For Lead Plaintiff-Appellant and Plaintiff-Appellant:** LAUREN A. ORMSBEE (Carol C. Villegas, Irina Vasilchenko, and Matthew J. Grier, *on the brief*), Labaton Keller Sucharow LLP, New York, NY.

**For Defendants-Appellees:** AUDRA J. SOLOWAY (Daniel J. Kramer, Dylan O. Smith, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Abigail Frisch Vice, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Denise L. Cote, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 24, 2025 judgment of the district court is **AFFIRMED**.

Lead Plaintiff-Appellant Leadersel Innotech ESG and Plaintiff-Appellant Hui Ma (collectively, "Plaintiffs") appeal from the district court's judgment dismissing their securities fraud claims against Defendants-Appellees Teladoc Health, Inc. and its (i) Chief Executive Officer Jason Gorevic, (ii) Chief Financial Officer Mala Murthy, (iii) Chief Marketing & Engagement Officer Stephany Verstraete, and (iv) Chief Accounting Officer Richard J. Napolitano (collectively, "Defendants"). Plaintiffs allege that Defendants violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 by misrepresenting the success of Teladoc's efforts to integrate a key acquisition. The district court granted Defendants' motion to dismiss, concluding that Plaintiffs failed to plead scienter. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Background

Teladoc is an online healthcare company, and the individual Defendants are (or were) all Teladoc executives. On October 29, 2020, Teladoc completed an $18.5-billion merger with Livongo, another online healthcare company. The deal combined the pre-merger Teladoc's acute-care business ("Legacy Teladoc") with Livongo's chronic-care business.

Plaintiffs allege that the Defendant executives made various misstatements about the integration of Livongo into Teladoc. *First*, they assert that Gorevic incorrectly claimed, in February and April 2021, that the sales teams of Legacy Teladoc and Livongo were "fully integrated," meaning that the teams were working together and "cross-selling" each other's services. Pls.' Br. at 12; J. App'x at 141, 152 (emphasis omitted). *Second*, Plaintiffs allege that Verstraete misstated, in November 2021, that Teladoc had integrated Livongo's "marketing data and tech stacks," Pls.' Br. at 12; J. App'x at 170, implying that Teladoc was using one platform to contact both Legacy Teladoc and Livongo customers. *Third*, Plaintiffs assert that Teladoc's 2021 10-K – signed by Gorevic, Murthy, and Napolitano in February 2022 – misstated risk disclosures by warning that Teladoc "may encounter" "potential" integration issues when it had already discovered issues

Case: 25-1022, 03/18/2026, DktEntry: 68.1, Page 5 of 20

specifically in "the integration of management teams, strategies, technologies and operations, products[,] and services." Pls.' Br. at 13; J. App'x at 176 (emphasis omitted).

The district court initially dismissed all of Plaintiffs' claims for failure to plead falsity under Rule 10b-5. Plaintiffs appealed, and we reversed and remanded, concluding that the complaint adequately pleaded falsity with respect to these specific statements. *Leadersel Innotech ESG v. Teladoc Health, Inc.*, No. 23-1112-cv, 2024 WL 4274362, at *4–5 (2d Cir. Sept. 24, 2024). On remand, the district court again dismissed the complaint – this time for lack of scienter, an issue that it had not reached in its earlier decision. Plaintiffs timely appealed.

## II. Plaintiffs Have Not Pleaded Scienter for Section 10(b) and Rule 10b-5.

We review the dismissal of a complaint *de novo*, accepting all factual allegations as true. *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). A "complaint alleging securities fraud must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act [(the 'PSLRA')] and [Federal Rule of Civil Procedure 9(b)] by stating with particularity the circumstances constituting fraud." *IBEW Loc. Union No. 58*

*Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot.*, 783 F.3d 383, 389 (2d Cir. 2015) (alteration adopted and internal quotation marks omitted).

Under this heightened pleading standard, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter. 15 U.S.C. § 78u-4(b)(2)(A). It is not enough that "a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind." *Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 314 (2007). Rather, the factfinder must first consider "any opposing inference one could draw from the facts alleged" and then decide whether scienter is "at least as compelling as [that] opposing inference." *Id.* at 324. If any opposing inference is more compelling, then a plaintiff has failed to meet his burden. *Id.*

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* (internal quotation marks omitted). A plaintiff may establish scienter by alleging facts either "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 48 (2d Cir. 2024)

(internal quotation marks omitted), *cert. denied sub nom. BDO USA v. New Eng. Carpenters Guaranteed Annuity & Pension Funds*, 146 S. Ct. 261 (2025).

**A. Plaintiffs Have Not Pleaded Motive and Opportunity.**

A defendant has motive if he could receive a "concrete benefit[]" from his fraud, and he has opportunity if he enjoys "the means and likely prospect of achieving" that benefit. *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)). One such means is to "misrepresent material facts to keep the price of stock high while selling . . . shares at a profit." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001). A plaintiff can plead scienter by showing that, around the time of the alleged fraud, a defendant sold stock in an "[u]nusual" way, *id.*, such as when an insider "bought more shares than [he] sold" during the relevant period, *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022).

In considering such contentions, a court may weigh whether "the sales were conducted pursuant to a 10b5-1 trading plan or were executed for procedural purposes." *Id.* at 355–56. A 10b5-1 plan lets a corporate insider sell stock, despite possessing material non-public information, "where it is clear that the information was not a factor in the decision to trade." Selective Disclosure & Insider Trading, 65 Fed. Reg. 51716, 51716 (Aug. 24, 2000). "Rule 10b5[-]1(c) provides an affirmative

defense to insider[-]trading [claims] for trades made pursuant to written plans for the sale of securities by [a] corporate insider[] who may have material non[-]public information," *CSX Corp. v. Children's Inv. Fund Mgmt.*, 654 F.3d 276, 302 n.13 (2d Cir. 2011) (Winter, *J.*, concurring) (citing 17 C.F.R. § 240.10b5-1(c)(1)(i)), if the insider adopted the plan "[b]efore becoming aware of the information," § 240.10b5-1(c)(1)(i)(A)(3). Rule 10b5-1 also protects "sell-to-cover transaction[s]," whereby a "plan authorizes an agent to sell only such securities as are necessary to satisfy tax[-]withholding obligations arising exclusively from the vesting of a compensatory award, such as restricted stock or stock[-]appreciation rights." § 240.10b5-1(c)(1)(ii)(D)(3); *see, e.g.*, *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 720 n.5 (S.D.N.Y. 2018) ("[S]tock sales for tax reasons are *not* indicative of fraud.").

Although Rule 10b5-1(c) creates an affirmative defense – which Defendants have not pleaded because they moved to dismiss before answering the complaint – Defendants' consistent use of 10b5-1 plans and sales for tax purposes nevertheless cuts against an inference that they acted with scienter. *See Bristol-Myers Squibb*, 28 F.4th at 355–56 (treating a 10b5-1 plan as a factor in determining whether stock sales are sufficiently unusual to suggest scienter). During the relevant period (the "Class Period"), Gorevic sold stock only "pursuant to a 10b5-

1 trading plan" or for the "procedural purpose[]" of satisfying tax obligations. *Id.*; *see* J. App'x at 307–08. Moreover, while he sold tens of millions of dollars in stock during the Class Period, he nevertheless *increased* his holdings during that span and actually sold *fewer* shares than he sold during a comparable control period. And Verstraete's and Murthy's sales during the Class Period were likewise attributable only to 10b5-1 plans or tax purposes.[1] J. App'x at 310, 312. Where, as here, "the vast majority of the [stock] sales were conducted pursuant to a 10b5-1 trading plan or were executed for procedural purposes," we cannot say that these trades were "timed suspiciously." *Id.* (affirming dismissal).

Because Plaintiffs offer no path to motive and opportunity other than these anodyne stock sales, they have failed to establish scienter on that basis. In short, Plaintiffs' contention that Defendants sold stock to profit from their misstatements is far less compelling than the "opposing inference" that these executives were simply selling their stock in the ordinary course. *Tellabs*, 551 U.S. at 324.

**B. Plaintiffs Have Not Pleaded Conscious Misbehavior or Recklessness.**

In addition to demonstrating scienter through motive and opportunity, a plaintiff may plead scienter by "provid[ing] strong circumstantial evidence of

---

[1] Plaintiffs do not contend that Napolitano sold any meaningful amounts of stock during the Class Period.

conscious misbehavior or recklessness." *DeCarlo*, 122 F.4th at 49 (internal quotation marks omitted). A complaint pleads recklessness if it "alleges that [a] defendant[] knew facts or had access to non-public information contradicting [his] public statements" and "knew or should have known [that he was] misrepresenting material facts with respect to the corporate business." *Scholastic*, 252 F.3d at 76. A complaint pleads "conscious misbehavior" if it "show[s] highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *Bristol-Myers Squibb*, 28 F.4th at 355 (internal quotation marks omitted). And where, as here, a plaintiff has failed to show motive and opportunity, he has a "correspondingly greater" burden to plead facts alleging "circumstantial evidence of conscious misbehavior." *Id.* (internal quotation marks omitted).

1. Plaintiffs Have Not Pleaded That Gorevic Consciously Misbehaved or Was Reckless.

Plaintiffs contend that Gorevic knew or should have known facts belying (i) his 2021 misstatements that the Legacy Teladoc and Livongo "sales teams had been 'fully integrated,'" Pls.' Br. at 26, and (ii) Teladoc's misleadingly vague warnings that it "may encounter" "potential" integration issues, *id.* at 13; J. App'x

at 176 (emphasis omitted), which it included in the 10-K filing that Gorevic signed in February 2022.

But Plaintiffs fail to plead any facts suggesting that Gorevic *knew* that these statements were inaccurate. Instead, they rely principally on two confidential witnesses, neither of whom provided relevant information. The first – CW2, a sales employee who was three levels below Gorevic in the reporting chain – sent emails to junior executives below Gorevic voicing concerns about the sales-team integration. But CW2 never raised her concerns to Gorevic, and Plaintiffs allege no facts to suggest that someone had conveyed CW2's concerns to him. The second – CW4, an employee who was not alleged to have been involved in sales-team-integration efforts, *see* J. App'x at 43 – merely asked Gorevic a question (unspecified in the complaint) about integration efforts generally, not about sales-team-integration efforts in particular. According to the complaint, Gorevic told CW4 that he would answer her question at a presentation the following day, and CW4 found Gorevic's handling of the integration issues at that presentation to be "underwhelming." J. App'x at 88. But even crediting the accuracy of CW4's characterization of Gorevic's presentation, nothing about these allegations suggests that Gorevic knew or should have known that his statements were false.

Having exhausted those confidential witnesses, Plaintiffs' remaining scienter theories are of the Gorevic-must-have-known variety. For example, Plaintiffs insist that Gorevic knew about the company's sales-team-integration issues because his subordinates did, but Plaintiffs do not allege what, if anything, those subordinates told Gorevic about these problems. Plaintiffs also contend that Gorevic must have known that his statements were false because the sales-team integration was central to Teladoc's business and ultimately resulted in two multi-billion-dollar write-offs. But while it is true that Gorevic admitted to integration difficulties during an April 2022 earnings call about one of the write-offs, his remarks focused on integration generally, not on the sales-team integration. And the earnings call reflects that integration was just one of many problems that Teladoc was facing at the time.

Finally, Plaintiffs argue that the specificity of Gorevic's misstatements – describing the sales teams as "fully integrated" – somehow shows that he must have understood the relevant subject matter well enough to know that his statements were not true. Pls.' Br. at 45. For this argument, Plaintiffs rely on *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359 (S.D.N.Y. 2012), which concluded that a defendant's highly specific

statements are "strong circumstantial evidence" that the defendant was "receiving specific information" about a subject, Pls.' Br. at 44 (quoting *Lockheed Martin*, 875 F. Supp. 2d at 372) (alteration adopted and internal quotation marks omitted). But the highly specific information at the heart of that case was a set of financial figures concerning revenues and profits. *See, e.g.*, *Lockheed Martin*, 875 F. Supp. 2d at 362–64. Financial data and accounting metrics are categorically different from phrases like "fully integrated," which – without more –provides no indication that the speaker had received any particular information about a company's performance.

Ultimately, Plaintiffs failed to plead that Gorevic behaved "highly unreasonabl[y]" or that his conduct constituted "an extreme departure from the standards of ordinary care." *Bristol-Myers Squibb*, 28 F.4th at 355 (internal quotation marks omitted). Nor do the pleadings suggest that he had "non-public information contradicting [his] public statements" such that he "knew or should have known" that he was "misrepresenting material facts," *Scholastic*, 252 F.3d at 76.

2. Plaintiffs Have Not Pleaded That Other Individual Defendants Consciously Misbehaved or Were Reckless.

Plaintiffs similarly contend that Murthy and Napolitano consciously misbehaved or were reckless because Murthy discussed unspecified "increased

competition" at various all-hands meetings between Fall 2020 and Spring 2022. Pls.' Brief at 54. Based on the statements of a confidential witness that "competitors were exploiting . . . integration problems," *id.*, Plaintiffs infer that Murthy must have been alluding to, and thus had knowledge of, the sales-team-integration issues. But Plaintiffs do not explain why Murthy's mention of competition – a garden-variety business risk – must have implicitly revealed an understanding of Teladoc's integration issues, as opposed to any of the other reasons why a large business may struggle with its competitors. Nor do Plaintiffs explain why Murthy's knowledge should be imputed to Napolitano.

Plaintiffs' arguments about Verstraete's scienter fare no better. On the one hand, Plaintiffs contend that Verstraete did not sufficiently understand the integration of Legacy Teladoc's and Livongo's marketing tools. *See id.* at 57–58 (relying on conclusory observation of confidential witness, who did not report directly to Verstraete, that Verstraete "did not seem familiar with Livongo products"). On the other hand, Plaintiffs point to Verstraete's use of industry terms – "marketing data and tech stacks" – to conclude that she must have "received (or recklessly disregarded) information" about the marketing-tool integration. *Id.* at 56. But as with Gorevic, Verstraete's purported misstatement

does not carry the same inference of knowledge as an officer's use of specific financial data. *See supra* at 12–13 (discussing *Lockheed Martin*, 875 F. Supp. 2d at 362–64, 372). Whether considered in isolation or separately, Plaintiffs' allegations do not support a strong inference that Verstraete acted with scienter.

### C. Plaintiffs Have Not Pleaded Scienter Under the Core-Operations Doctrine.

In the past, courts in this circuit have applied a "core-operations doctrine," which "posits that scienter may be imputed to key officers who should have known facts relating to the core operations of their company." *Gimpel v. Hain Celestial Grp.*, 156 F.4th 121, 148 n.19 (2d Cir. 2025) (internal quotation marks omitted). Although we have not clearly stated whether "the core-operations doctrine" survived the "passage of the PSLRA," *id.* (alteration adopted and internal quotation marks omitted), we need not decide that question today since Plaintiffs have not pleaded sufficient facts to invoke the doctrine.

Plaintiffs argue that "it is reasonable to infer that Defendants knew of significant issues impacting (or concerning) [the Livongo] integration, such as failed efforts to integrate the sales team and product, sales, and marketing[-]data platforms" because these areas were core to the company's operations. Pls.' Br. at 61. Though Teladoc's acquisition of Livongo for a record-breaking $18.5 billion

was plainly important to the core operations of Teladoc, Plaintiffs have not plausibly pleaded that the details of the sales-team staffing arrangements and technical integration of marketing databases are sufficiently "core" to the acquisition and Teladoc's operations to support a "core operations" argument. These sorts of details regarding back-office functions are not the kind that we can assume to be front and center for senior executives. *Cf. Cosmas v. Hassett*, 886 F.2d 8, 11–13 (2d Cir. 1989) (treating "apparently significant portion of revenues" as front and center for executives). Put simply, even if the core-operations doctrine has survived the PSLRA in some form, the facts alleged here do not amount to issues within Teladoc's core operations.

### D. Plaintiffs Have Not Pleaded That Teladoc Had Scienter.

Plaintiffs next assert that the district court erred in rejecting their allegations that Teladoc itself possessed corporate scienter because the individual Defendants and other non-defendant executives possessed scienter. They argue that these non-defendant executives had scienter – even though they did not make the allegedly false statements at issue here – because their statements betrayed that they (and consequently Teladoc) knew that the Livongo integration was not proceeding as planned. We disagree.

"When [a] defendant is a corporate entity, . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). "In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant," *id.*, as Plaintiffs have attempted to do here with Gorevic, Verstraete, Murthy, and Napolitano. But as we noted above, Plaintiffs failed to plead scienter for these individual Defendants, so we cannot impute their states of mind to Teladoc.

Plaintiffs may also, however, impute the scienter of employees "involved in the dissemination of the fraud . . . to the corporation, even if they themselves were not the actual speaker[s]" or the individual defendants. *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020). To do so, a complaint must provide at least some "connective tissue between [non-speaking] employees and the alleged misstatements." *Id.* at 99. Here, Plaintiffs allege that three Teladoc executives who did not make the misstatements at issue here had scienter that could be imputed to the company.

*First*, in Plaintiffs' telling, Chief Operating Officer David Sides must have known about sales-team-integration issues because he ran Teladoc's "commercial organization," Pls.' Br. at 71, and because, when asked in June 2021 about the Livongo integration, Sides responded, "[t]hat's a great question," J. App'x at 77. But neither Side's title nor his nonresponse to the question tells us anything about his knowledge (or lack thereof) of the integration challenges.

*Second*, Plaintiffs assert that Chief Medical Officer Bimal Shah had scienter because he wrote – the day after the merger closed – that getting Legacy Teladoc and Livongo sales personnel to work together was "an imperative." Pls.' Br. at 72; J. App'x at 75. But Shah was writing in response to a question about a project for a single hospital system. Moreover, calling integration an imperative the day after the transaction closed does not support an inference that the integration would eventually prove unsuccessful; after all, at that point, it had hardly even begun. Plaintiffs also allege that Shah had scienter because he gave a public interview in February 2021 in which he discussed the Livongo integration. But Plaintiffs do

not explain how a general discussion about the integration shows that Shah knew about the specific misstatements at issue here.[2]

*Finally*, Plaintiffs allege that Joe DeVivo, President of Teladoc's Hospital & Health Systems division, knew about sales-team-integration issues because he participated in the same February 2021 interview. Again, we are unpersuaded. DeVivo did not even discuss the Livongo integration in that interview – only Shah did. And given that the allegations against Shah are insufficient to establish scienter, the allegations against DeVivo are even less so. In short, Plaintiffs' allegations against Sides, Shah, and DeVivo provide neither evidence of their knowledge of any falsity nor "connective tissue between" them and the alleged misstatements. *Jackson*, 960 F.3d at 99. Therefore, Plaintiffs have failed to plead corporate scienter and consequently 10b-5 liability for Teladoc.

## III. Plaintiffs Have Not Pleaded That the Individual Defendants Violated Section 20(a).

Plaintiffs also allege that Gorevic, Murthy, Verstraete, and Napolitano controlled Teladoc and consequently were "liable jointly and severally" under section 20(a) for Teladoc's securities fraud. 15 U.S.C. § 78t(a). "[T]o establish a

[2] Although Plaintiffs previously named Shah as a defendant in this case, we affirmed the district court's dismissal of all claims against him the last time this case came before us. *Leadersel Innotech*, 2024 WL 4274362, at *3.

*prima facie* case of liability under [section] 20(a), a plaintiff must show," *inter alia*, "a primary violation by a controlled person." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). But because Plaintiffs failed to establish that Teladoc violated Rule 10b-5, they cannot bring section 20(a) claims against the individual Defendants for the company's actions.

* * *

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

UNITED STATES SECOND CIRCUIT COURT OF APPEALS

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

UNITED STATES SECOND CIRCUIT COURT OF APPEALS



MANDATE ISSUED ON 08/18/2026